# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL D. STRICKLAND, | : | No. 3:08cv1570 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| MAHONING TOWNSHIP, | : | |
| MAHONING TOWNSHIP POLICE | : | |
| DEPARTMENT, | : | |
| FRANKLIN TOWNSHIP, | : | |
| CARBON COUNTY, | : | |
| OFFICER AUDIE M. MERTZ, | : | |
| POLICE CHIEF MARK ZENKO, | : | |
| OFFICER FRANK BOUNAIUTO, | : | |
| RALPH FAHRINGER, and | : | |
| JESSICA FAHRINGER, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendants Mahoning Township, Mahoning Township Police Department, Officer Audie M. Mertz and Police Chief Mark Zenko's motion to dismiss the complaint. Having been fully briefed, the matter is ripe for disposition.

**Background**[1]

This case arises out of the November 18, 2006 arrest of plaintiff, his brother Craig Strickland, and James E. Rose, Jr. by police officers from the defendant municipalities. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 27). Defendant and

---

[1]The facts in this section are drawn from the allegations in the complaint. The court takes no position on their veracity.

Craig Strickland had spent that Saturday working to repair the floor of an Allentown nightclub owned by their friend Rose. (Id.). Sometime in the afternoon, Rose asked the Strickland brothers to help him return three dogs to the Carbon County home of defendant Ralph Fahringer. (Id.). Rose had purchased the dogs from Fahringer on the previous day. (Id.). Plaintiff only reluctantly accompanied Rose. (Id. at ¶ 2). He was tired, had been drinking at the club and had not slept much the previous night. (Id.).

The three men drove to Rose's house and picked up the three dogs, placing them in a cardboard box in the back of Rose's truck. (Id. at ¶ 29). Plaintiff fell asleep in the back of the truck on the way to Fahringer's home in Lehighton, Pennsylvania. (Id. at ¶ 30). He remained asleep in the truck when the three men arrived at Fahringer's home. (Id. at ¶ 31). He learned of a confrontation between Craig Strickland and Rose and Fahringer only after he awoke. (Id.). According to the story plaintiff heard, Craig Strickland first left the truck to return the dogs alone. (Id. at ¶ 31(a)). When he got out of the truck, he noticed that the front door of the house had been opened six or seven inches. (Id.). He informed the person inside the house that he was there to return puppies. (Id.). When Craig Strickland turned around to get the dogs from the truck, a rifle barrel appeared sticking out of the doorway of the Fahringer's home. (Id. at ¶ 31(b)). Craig Strickland saw Ralph Fahringer with a gun. (Id.). Fahringer told Strickland to leave the dogs in the driveway and get off his property. (Id.). Hearing this commotion, Rose got out of the

2

truck to tell Fahringer that he had arrived to return the dogs and get his money back. (Id. at ¶ 31(c)). Fahringer then opened the door more widely and aimed his rifle directly at Rose. (Id.). Craig Strickland, who had already returned to the truck, urged Rose to get back in the truck lest he be shot. (Id. at ¶ 31(d)). Rose did so, and backed the truck out of the driveway. (Id.).

Rose dialed 911 as he backed out of the driveway. (Id. at ¶ 31(e)). As he drove toward the main highway, Rose told the police dispatcher about the incident. (Id.). When he was about three blocks from the Fahringer residence, the dispatcher told Rose to return to the area near the home and wait for police to arrive. (Id.). Rose parked his vehicle on Fritz Drive in front of the Fahringer home. (Id.). Plaintiff alleges that he never left the truck at any time during the confrontation between his brother, Rose and the Farhingers. (Id. at ¶ 32). Fahringer never made allegations to the police about the plaintiff. (Id.).

Almost immediately after Rose finished his conversation with the 911 dispatcher, Defendant Mertz, a Mahoning Township Police Officer, arrived on the scence. (Id. at ¶ 31(f)). With Mertz were Roger A. Gehring, Matthew Arner and Defendant Frank Buonaiuto, a Franklin Township Police Officer. (Id.). The Defendant Police Officers questioned the plaintiff. (Id. at ¶ 34). Plaintiff refused to cooperate with their questions, and plaintiff alleges that the officers manufactured criminal charges against him because of this refusal. (Id. at ¶ 34). Plaintiff alleges that defendants never issued him his Miranda warnings before questioning him. (Id.

3

at ¶ 35).

After stopping the plaintiff, his brother and Rose, officers searched the three men and their truck. (Id. at ¶ 37). This search found no weapons on the men or in the car. (Id.). Once officers completed the search, they handcuffed the plaintiff and placed him in a patrol car. (Id. ¶ 38). Plaintiff was not given his Miranda rights at this point, nor was he told that he was under arrest. (Id.). Because he was not told he was under arrest and had not committed a crime, plaintiff did not respond to Officer Buonaiuto's request for his name and identification. (Id. at ¶ 39). Instead, "still half-asleep [and] under the influence of alcohol," plaintiff gave Buonaiuto the name of Michael Andrews. (Id. at ¶ 41). When officers discovered the plaintiff did not match the picture of Michael Andrews that came up on the computer screen in their police car, they told plaintiff he would be charged with giving false information to a police officer. (Id. at ¶ 42). He later discovered he had been charged with "False Report, Falsely Incriminate Another and Defiant Trespass." (Id. at ¶ 42). Plaintiff and Rose were arrested. (Id. at ¶ 63). Police issued Craig Strickland a citation and released him. (Id.). They held plaintiff on $1,000 bond and Rose on $3,500 bond. (Id.).

Plaintiff and Rose appeared before a state-court magistrate judge. (Id. at ¶ 65). Rose had an anxiety attack while he and plaintiff appeared before the magistrate judge. (Id. at ¶ 66). Neither the magistrate judge nor Defendant Officer Mertz offered Rose any assistance, though they recognized his distress. (Id. at ¶

4

66).

After this appearance, plaintiff and Rose return to the Carbon County Prison. (Id. at ¶ 70). He found himself unable to contact his family and have them arrange for bail. (Id. at ¶ 69). Defendants placed plaintiff in a separate jail cell from Rose. (Id. at ¶ 70). This cell lacked adequate heating, an "inhumane condition" that plaintiff alleges was "a form of torture." (Id. at ¶ 70). While incarcerated at the Carbon County Prison, plaintiff was also "subjected to racial name-calling and other racial harassment." (¶ 71). Plaintiff contacted his relatives and made bail the following Monday morning. (Id. at ¶ 73).

On February 1, 2007, plaintiff entered a guilty plea to the charge of providing false identification to law enforcement officers. (Id. at ¶ 74). Plaintiff contends that he did not willingly enter this plea. (Id.). He was instead forced to pay a fine of $300, $136 in court costs, and $1,000 bail. (Id.).

Plaintiff alleges that he was a victim of false arrest, false imprisonment, and racial profiling. (Id. at ¶ 35). He also contends that his arrest unlawfully restricted his right to travel pursuant to the Fourteenth Amendment. (Id. at ¶ 36). In addition, plaintiff alleges that his unlawful arrest was the result of a conspiracy between Defendant Mertz, the other police officers on the scene, Chief Mark Zenko and Assistant District Attorney Jean Engler. (Id.). Moreover, plaintiff insists that the racial discrimination he experienced was a result of a policy or practice followed by the defendant municipalities. (Id. at ¶ 47). The discriminatory treatment he endured

5

from the officers on the scene was a result of the defendant townships' failure to provide training for their officers in how to deal with black people. (Id. at ¶ 50).

On August 22, 2008, plaintiff filed the instant complaint (Doc. 1) and motion for leave to proceed *in forma pauperis* (Doc. 2) in this court. The complaint consists of three counts. Count I, brought pursuant to 42 U.S. §§ 1981, 1982 and 1983 against Defendants Strickland, Mertz, Buonaiuto, Mahoning Township and Franklin Township, alleges that the defendants violated plaintiff's constitutional rights in a number of ways. The count contends that plaintiff was the victim of an unlawful arrest, suffered from an unreasonable search and seizure, suffered cruel and unusual punishment, faced excessive bail, had his free speech rights unlawfully restricted, was denied his liberty without due process of law, suffered from the use of unreasonable force, faced racial discrimination and racial profiling, and had his right to travel unlawfully restricted. Count II, brought pursuant to 42 U.S.C. § 1985, alleges a conspiracy to violate plaintiff's constitutional rights between Defendants Mertz, Buonaiuto, Carbon County, Franklin Township, Mahoning Township, and Ralph & Jessica Fahringer. Count III alleges supervisory liability pursuant to 42 U.S.C. § 1986 against Defendants Mahoning Township, Carbon County, Franklin Township, Zenko, Keiper, Eidem, Blocker, Snyder, Stawnyczy, Green, Smith and Kocher.

On October 9, 2008, though the court had not yet approved service of the complaint, Defendant Carbon County filed a motion to dismiss the instant complaint.

6

(Doc. 7). The parties then briefed the issue. On November 7, 2008, the court issued an opinion (Doc. 11) granting the plaintiff's motion to proceed in forma pauperis but dismissing plaintiff's claims for false arrest and excessive bail, as well as his claims against certain defendants. The court granted Defendant Carbon County's motion to dismiss with respect to plaintiff's claim for punitive damages and denied it in all other respects. After the court issued this decision, plaintiff served the complaint on the remaining defendants. Defendants Mahoning Township, Mahoning Township Police Department, Audie Mertz and Mark Zenko then filed a motion to dismiss (Doc. 15). The parties briefed the issues related to that motion, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-pleaded allegations of the complainant must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-666 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The complaint is properly dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court will apply this standard when addressing Defendant Carbon County's motion.

**Discussion**

Defendants argue that the claims against them should be dismissed on several grounds. The court will address each in turn.

**A. Mahoning Township Police Department**

Defendants argue that any claims against the police department should be dismissed. Plaintiff makes no specific allegations against the department, and even if he did the department and the township are the same legal entity for the purposes of the instant action. Plaintiff agrees that his claims are more properly directed at the township. He does not oppose this aspect of the motion. The court will therefore grant defendants' motion on this point and dismiss the claims against the police department.

**B. Claims Against the Individual Defendants in their Official Capacities**

Defendants next contend that plaintiff's claims against the individual defendants in their official capacities must be dismissed, as they are duplicative of plaintiff's claims against the municipality itself. The court agrees. An official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Such a suit is properly treated as a suit against the entity. Id. at 166. The court will therefore dismiss the claims against the Mahoning Township officials in their official capacities.

**C. Claims for Punitive Damages Against the Municipal Defendants**

Defendants next seek dismissal of plaintiff's claims for punitive damages against the municipal defendants. They argue that punitive damages cannot be obtained against a municipality, and as such cannot be obtained against individual

9

defendants in their official capacities.  Moreover, the conduct alleged against the individual municipal defendants is not reckless or in callous disregard of federally guaranteed rights.  As such, defendants contend, punitive damages are not available against those defendants.  Plaintiff agrees that punitive damages are not available against the municipality, but argues that punitive damages could be awarded against the individual defendants in their individual and official capacities.

The court finds that punitive damages are not available against the individual defendants in their official capacities.  As explained above, a suit against an individual in her official capacity is a suit against the municipality.  Since a municipality cannot be liable for punitive damages, neither can an individual sued in her official capacity.  The court will deny the motion, however, as it applies to the individual defendants in their individual capacities.  "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  The court finds that if plaintiff could prove his allegations that the individual defendants deprived him of federally protected rights after his arrest and while holding him in custody, and that they were motivated by a racial animus, he could establish a reckless and callous indifference to his rights.  The court will deny the motion on this point.

**D. Rooker-Feldman Doctrine**

Defendants contend that plaintiff's claims are barred by the Rooker-Feldman doctrine, which precludes lower federal courts from exercising appellate jurisdiction over final state court judgments. Lance v. Dennis, 546 U.S. 459, 463 (2006). Defendants argue that plaintiff pled guilty to providing false identification to law enforcement officers, and cannot now recover damages based on that conviction. Plaintiff argues that his claims for damages are based on constitutional violations that occurred separate from his conviction, and are thus not barred by the doctrine.

Plaintiff here brings his § 1983 and § 1985 claims for 1) unlawful arrest; 2) unreasonable search and seizure; 3) cruel and unusual punishment; 4) excessive bail; 5) limits on his freedom of speech; 6) deprivations of his liberty without due process of law; 7) excessive force; 8) summary punishment; 9) racial discrimination and racial profiling; and 10) unlawful restrictions on his right to travel. In an earlier decision, the court determined that some of these claims could be combined, finding that the following claims remained: 1) excessive bail; 2) unlawful arrest; 3) unreasonable search and seizure; 4) cruel and unusual punishment; and 5) racial profiling (equal protection). The court found that plaintiff's excessive bail and unlawful arrest claims were frivolous and should be dismissed. As such, plaintiff has claims remaining for unreasonable search and seizure, cruel and unusual punishment, and equal protection. The court must determine whether any of these remaining claims are barred by the Rooker-Feldman doctrine.

The court concludes that the doctrine is inapplicable to plaintiff's three

11

remaining constitutional claims. Plaintiff's equal protection claim is not the equivalent of an appeal of a final state-court judgment. To prevail on an equal protection claim in the racial-profiling context, plaintiff must establish that he is a member of a protected class and similarly situated to others not within the protected class who were not prosecuted. See Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002). Plaintiff does not need to establish that he was innocent of the underlying charge, or that the state court judgment was invalid to prevail. Instead, he must show that others similarly situation and not within the protected class were not prosecuted. Plaintiff asserts that the Fahringers were similarly situated, not members of a protected class, and not prosecuted. The doctrine therefore does not apply to bar this claim.

In the same way, plaintiff's unreasonable search and seizure claim is not barred by the Rooker-Feldman doctrine, as he does not need to challenge the adequacy of his conviction to prevail on that claim. A defendant's guilt on charges against him is "simply irrelevant to the legality of the search under the fourth amendment or to [his] right to compensation from state officials under section 1983." Haring v. Prosise, 462 U.S. 306, 316 (1983). Plaintiff's cruel and unusual punishment claim is likewise not affected by the Rooker-Feldman doctrine. Whether he suffered cruel and unusual punishment does not depend on the adequacy of the grounds used to hold him.

**E. Supervisory Liability**

Count III of plaintiff's claim alleges supervisory liability against Mahoning Township, Carbon County, Franklin Township and Police Chief Zenko. Defendants here claim that plaintiff has alleged only respondeat superior liability on this count and have failed to point to any policy or custom that would expose these supervisors to liability.

Under the law, a municipality cannot be liable for civil rights violations on a respondeat superior basis. Instead, a plaintiff must establish that the violation occurred pursuant to the municipality's policy or custom. Monell v. Department of Social Svcs., 436 U.S. 658, 694 (1978). In the instant case, the defendants argue that plaintiff has not alleged a township policy or custom that caused the harm at issue. The court is unconvinced. The complaint alleges that plaintiff faced discrimination pursuant to "the widespread and pervasive policy, custom, practice and usage" of racial discrimination. (Complt. at § 115). These allegations are sufficient to survive a motion to dismiss.

### F. Section 1985 Claim

Defendants argue that plaintiff's conspiracy claim, brought pursuant to 42 U.S.C. § 1985, should be dismissed. That section provides a cause of action for conspiracy to violate civil rights. The elements of such a cause of action are: 1) a conspiracy; 2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to

13

person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

In his complaint, plaintiff alleges that the defendants conspired with each other to violate his civil rights. (Complt. at ¶ 101). Plaintiff avers that defendants conspired to achieve his false arrest and deprive him of his due process rights because he was black. (Id.). These actions, the complaint contends, caused plaintiff injury. (Id. at ¶ 106). Plaintiff points to specific acts and to specific rights which those acts violated. Read broadly, then, the complaint makes out a claim for conspiracy against the moving defendants. The court will deny the motion on this point.

**G. Qualified Immunity**

Finally, the individual defendants, Officer Mertz and Chief Zenko, contend that they are entitled to qualified immunity for the actions about which plaintiff complains. Qualified immunity can serve as a defense for an individual defendant accused of a civil rights violation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991). Qualified immunity does not apply where state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 699-700 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a qualified immunity analysis, therefore, the court must examine: 1) whether officials violated a constitutional right and 2) whether that

14

right was clearly established at the time. Id.

Here, the plaintiff has alleged facts which–if proved–could demonstrate that officials violated plaintiff's constitutional rights. If plaintiff proved such violations, qualified immunity would not be appropriate because the rights that plaintiff advances–the right to be free from racial discrimination, to be free from cruel and unusual punishment, and to be free from unreasonable search and seizure–are clearly established rights. Qualified immunity does not apply at this point.

**Conclusion**

For the reasons stated above, the court will deny the defendants' motion in part and grant it in part. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL D. STRICKLAND,** | : | No. 3:08cv1570 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **MAHONING TOWNSHIP,** | : | |
| **MAHONING TOWNSHIP POLICE** | : | |
| **DEPARTMENT,** | : | |
| **FRANKLIN TOWNSHIP,** | : | |
| **CARBON COUNTY,** | : | |
| **OFFICER AUDIE M. MERTZ,** | : | |
| **POLICE CHIEF MARK ZENKO,** | : | |
| **OFFICER FRANK BOUNAIUTO,** | : | |
| **RALPH FAHRINGER, and** | : | |
| **JESSICA FAHRINGER,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 8th day of July 2009, Defendant Mahoning Township, Mahoning Township Police Department, Audie M. Mertz and Mark Zenko's motion to dismiss (Doc. 15) is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

1) The motion is granted with respect to plaintiff's claims against the Mahoning Township Police Department;

2) The motion is granted with respect to plaintiff's claims for punitive damages against the Township and against the individual defendants in their official capacities;

16

3) The motion is granted with respect to plaintiff's claims against the individual defendants in their official capacities; and

4) The motion is denied in all other respects.

                                            **BY THE COURT:**

                                            **s/ James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **UNITED STATES DISTRICT COURT**