**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL D. STRICKLAND,<br>　　　　Plaintiff | : | |
| | : | |
| v. | : | No.　08-1570 |
| | : | |
| MAHONING TOWNSHIP, MAHONING | : | |
| TOWNSHIP POLICE DEPARTMENT, | : | |
| FRANKLIN TOWNSHIP, CARBON | : | |
| COUNTY, OFFICER AUDIE M. MERTZ | : | |
| POLICE CHIEF MARK ZENKO, | : | |
| BRUCE L. KEIPER, CHARLES R. | : | |
| EIDEM, DAWN L. BLOCKER, | : | |
| PATRICIA SNYDER, GEORGE | : | |
| STAWNYCZYJ, OFFICER FRANK | : | |
| BUONAIUTO, ROD GREEN, LARRY | : | |
| SMITH, PAUL KOCHER, and RALPH | : | |
| and JESSICA FAHRINGER, | : | Jury Trial Demanded |
| 　　　　Defendants | : | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT OF DEFENDANTS FRANKLIN TOWNSHIP AND FRANK BUONAIUTO**

Defendants, Franklin Township and Frank Buonaiuto, through undersigned counsel and pursuant to L.R. 56.1, aver that the following facts are not in dispute and may be considered by the court in support of their Motion for Summary Judgment:

1.　　Plaintiff is an African-American male and filed a civil rights complaint on August 22, 2008 against a number of defendants including Franklin Township and Frank Buonaiuto. (Plaintiff's Complaint, (Doc. 1) at ¶ 1).

2.　　Plaintiff did not read the complaint in full detail before he signed it. (Strickland Deposition, Exhibit 1, pp. 63-64).

3.　　Plaintiff's complaint is not completely accurate. (Strickland Deposition, pp. 103-104).

4.     Although Plaintiff alleged excessive force in the complaint, Plaintiff is not making a claim for excessive force. Plaintiff was not physically handled in inappropriate way. (Strickland Deposition, p. 104, lines 15-16, p. 105, lines 2-5).

5.     Plaintiff never read any written policies from Franklin Township. (Strickland Deposition, p. 106, lines 22-24).

6.     Plaintiff never read the policies from Franklin Township and does not know what is contained in those policies. (Strickland Deposition, p. 108, lines 7-13).

7.     Plaintiff does not know which police officer put him in handcuffs. (Strickland Deposition, p. 92, lines 5-8).

8.     Plaintiff does not know which police department's vehicle he was placed in when he was moved from the vehicle in which he was a passenger. (Strickland Deposition, p. 92, lines 9-14).

9.     Plaintiff did not read his complaint to make sure that everything was truthful. (Strickland Deposition, p. 64, lines 13-21).

10.     Plaintiff was under the influence of alcohol at the time of the incident, having consumed a six-pack of 16-ounce cans of Olde English [malt liquor] prior to traveling to Carbon County. (Doc. 1., ¶¶ 28, 41, Strickland Deposition, p. 96, lines 6-22).

11.     Plaintiff was arrested by Mahoning Township Police on November 18, 2009 and charged with the following crimes:

1)     False reports to law enforcement officers pursuant to 18 P.S. §4906;
2)     False identification to law enforcement officers pursuant to 18 P.S. §4914; and
3)     Criminal trespass pursuant to 18 P.S. §3503. (Strickland Criminal Docket, Exhibit 2).

12.     On February 1, 2007 Strickland plead guilty to the offense of "False Identification to Law Enforcement Officer" a misdemeanor of the third degree. (See Exhibit 2).

13.     Strickland did not challenge his guilty plea or seek to withdraw his guilty plea. (See Exhibit 2).

14.     Plaintiff gave the false name "Michael Andrews" to Officer Buonaiuto because plaintiff felt there was no need to cooperate with the police. (Doc. 1, ¶41).

15.     Plaintiff understands it is illegal to give a false name to a police officer. (Strickland Deposition, p. 101, lines 21-25).

16.     Regarding plaintiff's allegations of a lack training of Officer Buonaiuto, it is merely plaintiff's personal opinion there could be a lack of training. Plaintiff does not know the level of Officer Buonaiuto's training. Plaintiff has no information about how any of the officers on the scene were trained. (Strickland Deposition, p. 109, lines 19-25, p. 110, lines 1-10, p 73, lines 14-20).

**SIANA, BELLWOAR & McANDREW, LLP**

By:       /s/ Christopher P. Gerber
          Christopher P. Gerber, Esquire, ID# 76449
          Matthew R. Kline, Esquire, ID# 86922
          Attorneys for Defendants
          Franklin Township, Frank Buonaiuto

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL D. STRICKLAND,<br>                     Plaintiff | : | |
| | : | |
| v. | : | No.    08-1570 |
| | : | |
| MAHONING TOWNSHIP, MAHONING | : | |
| TOWNSHIP POLICE DEPARTMENT, | : | |
| FRANKLIN TOWNSHIP, CARBON | : | |
| COUNTY, OFFICER AUDIE M. MERTZ | : | |
| POLICE CHIEF MARK ZENKO, | : | |
| BRUCE L. KEIPER, CHARLES R. | : | |
| EIDEM, DAWN L. BLOCKER, | : | |
| PATRICIA SNYDER, GEORGE | : | |
| STAWNYCZYJ, OFFICER FRANK | : | |
| BUONAIUTO, ROD GREEN, LARRY | : | |
| SMITH, PAUL KOCHER, and RALPH | : | |
| and JESSICA FAHRINGER, | : | Jury Trial Demanded |
|                     Defendants | : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a true and correct copy of the Statement of Facts in Support of Motion for Summary Judgment of Defendants Franklin Township and Frank Buonaiuto was served electronically and/or by first class mail, postage prepaid, addressed as follows:

Samuel D. Strickland
227 North 15th Street
Allentown, PA 18102

Joseph Golberg, Esquire
Wendi D. Barish, Esquire
Weber, Gallagher, Simpson, Stapleton,
Fires & Newby, LLP
2000 Market Street, 13th Floor
Philadelphia, PA 19103

Gerard J. Geiger, Esquire
Newman, Williams, Mishkin, Corveleyn,
Wolfe & Fareri
712 Monroe Street
Stroudsburg, PA 18360

Ralph and Jessica Fahringer
418 Fritz Drive
Lehighton, PA 18235

**SIANA, BELLWOAR & McANDREW, LLP**

Date: __11/24/09_____        By:    _____/s/ Christopher P. Gerber_____
                                        Christopher P. Gerber, Esquire, ID# 76449
                                        Matthew R. Kline, Esquire, ID# 86922
                                        Attorneys for Defendants
                                        Franklin Township, Officer Frank Buonaiuto

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

SAMUEL D. STRICKLAND                    :
                                        :
                                        :
    -vs-                                : 3:08-CV-01570
                                        :
                                        :
MAHONING TOWNSHIP, MAHONING             :
TOWNSHIP POLICE DEPARTMENT,             :
FRANKLIN TOWNSHIP, CARBON               :
COUNTY, OFFICER AUDIE M.                :
MERTZ, POLICE CHIEF MARK                :
ZENKO, BRUCE L. KEIPER,                 :
CHARLES R. EIDEM, DAWN L.               :
BLOCKER, PATRICIA SNYDER,               :
GEORGE STAWNYCZYJ, OFFICER              :
FRANK BUONAIUTO, ROD GREEN,             :
LARRY SMITH, PAUL KOCHER and            :
RALPH AND JESSICA FAHRINGER             :

---

DEPOSITION OF SAMUEL D. STRICKLAND

taken on behalf of Defendant Carbon County, at the law

offices of Newman, Willliams, Mishkin, Corveleyn, Wolfe &

Fareri, P.C., 712 Monroe Street, Stroudsburg, Pennsylvania,

on Monday, October 5, 2009, beginning at 1:26 p.m., before

Josephine Hollman, Court Reporter and Notary Public.

---



---

**PANKO REPORTING**
537 Sarah Street, 2nd Floor
Stroudsburg, PA    18360
(570) 421-3620

2

APPEARANCES:       SAMUEL D. STRICKLAND, Pro Se
227 North 15th Street
Allentown, PA   18102

WEBER, GALLAGHER, SIMPSON,
STAPLETON, FIRES & NEWBY, LLP
by WENDI D. BARISH, ESQUIRE
2000 Market Street, Suite 1300
Philadelphia, PA   19103
For Defendants Mahoning Township,
et al.

NEWMAN, WILLIAMS, MISHKIN,
CORVELEYN, WOLFE & FARERI, P.C.
by GERARD J. GEIGER, ESQUIRE
         and
by ROBERT J. KIDWELL, ESQUIRE
712 Monroe Street
P.O. Box 511
Stroudsburg, PA   18360-0511
For Defendant Carbon County

SIANA, BELLWOAR & McANDREW, LLP
by MATTHEW R. KLINE, ESQUIRE
Ludwigs Corner Professional Center
941 Pottstown Pike, Suite 200
Chester Springs, PA   19425
For Defendant
Officer Frank Buonaiuto

---

Samuel Strickland                63

```
 1    Couldn't answer that.
 2                    MR. GEIGER:  All right.  I'm
 3    going to turn the questioning over to whichever one
 4    of you wants to go next.
 5                    MS. BARISH:  I'll go.
 6    BY MS. BARISH:
 7    Q.   Mr. Strickland, I represent Mahoning Township
 8    and Officers Mertz and Chief Zenko, they're named
 9    defendants.
10    A.   Officer who?
11    Q.   Officer Mertz.
12    A.   And?
13    Q.   Chief Zenko.  They're two of the people that
14    you have --
15                    MS. BARISH:  Do you have that
16    complaint next to you?
17                    MALE VOICE:  Yeah.
18    BY MS. BARISH:
19    Q.   I'm just going to show you the complaint that
20    you filed.
21         Is this your signature that's on -- it's not a
22    numbered page, but at the end of the complaint,
23    almost the last page, is that your signature?
24    A.   Yes, it is.
25    Q.   Have you seen this complaint before you signed
```

Samuel Strickland                    64

1   it?

2   A.    I probably briefed through it.  I didn't read

3   it in full detail.

4   Q.    Okay.  How did you come to see this complaint?

5   A.    Mr. Anthony brought it to my attention.

6   Q.    Do you remember, were you in his office at the

7   time?

8   A.    Yes.

9   Q.    Okay.  What did he say to you when he gave you

10  the complaint?

11  A.    I have some things for you to sign so I can

12  get this out basically is what he said.

13  Q.    Did he ask you to make sure that the

14  information in the complaint was truthful?

15  A.    Meaning?

16  Q.    Did he ask you to read it and make sure that

17  everything was truthful in here and --

18  A.    Not really, he just said I have some things

19  for to you sign.  I was basically trusting him

20  that, you know what I'm saying, that what he was

21  writing was correct.

22  Q.    Well, did you have a meeting with him before

23  then to explain to him?  Like how would he get the

24  information that was in here?

25  A.    Well, he -- we sat down, he asked me some

Samuel Strickland                    103

1   Q.    Okay.  I mean, isn't that -- I'm sorry.  I

2   don't want to cut you off.

3   A.    Go ahead.

4   Q.    Isn't that more like a plea bargain, you're

5   being forced -- you're cutting a deal saying I'll

6   enter a guilty plea to one charge so the rest of it

7   gets thrown out and I don't go to jail?  You know,

8   you tell me if I'm wrong.  Isn't that the way it

9   works?

10  A.    Man, I don't know.  I really don't know how it

11  works.

12  Q.    Okay.  Ms. Barish asked you a little bit about

13  this, this thing was drafted -- this complaint,

14  excuse me, was drafted by Tom Anthony?

15  A.    Yes, sir.

16  Q.    And you said you read some of it before it was

17  filed?

18  A.    Yes, sir.

19  Q.    Can we agree --

20  A.    Briefly.

21  Q.    I'm sorry?

22  A.    Briefly.

23  Q.    Briefly.  Okay.

24        Can we agree as we sit here today that there

25  are things in here that aren't accurate?

Samuel Strickland                    104

1   A.    Well, I -- it's possible.  It's possible.  I

2   wouldn't doubt it.  It's possible, you know.  But

3   for the most part it's -- I would imagine that

4   they're accurate for the most part.  I mean, I

5   wouldn't say everything is 100 percent solid.  I'm

6   quite sure there's a few flaws and discrepancies in

7   it.  Not exactly accurate, but for the most part it

8   is I would think.  I would like to think so.

9   Q.    Mr. Strickland, there are references in the

10  complaint to excessive force.  And from what you

11  told us today in answers to your questions --

12  A.    Excess force?

13  Q.    Excessive force.  I'm not hearing that there

14  was any force used at all.

15  A.    I have no complaint about excessive force.  I

16  was not physically handled in any --

17  Q.    We can agree no one shoved you, punched you,

18  kicked you --

19  A.    Exactly.  Nah, nah.

20  Q.    Can we agree to that?

21  A.    Yes, sir.  Yes, sir.

22  Q.    You think that's maybe language thrown in by

23  Mr. Anthony?

24  A.    I would imagine so, sir.  Not to try to make

25  light or nothing but I would imagine so.

Samuel Strickland                    105

1   Q.    Okay.

2   A.    I'm not trying to put myself in a situation

3   where it causes problems for myself, you know.  But

4   I know I wasn't physically handled in any

5   inappropriate way if that's what you're asking me.

6   Q.    That is what I'm asking.

7   A.    No, sir, I was not.  No, sir, I was not.

8   Q.    I think you were asked some of these questions

9   before, I just want to clear this up now.

10        You don't know what's in the policies of

11  Mahoning Township or Franklin Township?  You don't

12  know what's in their written policies, correct?

13  A.    I don't even understand what you're saying as

14  far as written policies.  In reference to what,

15  sir?

16  Q.    Let me back up.  Oftentimes police departments

17  operate with a policy or a procedure manual or

18  standard operating procedures.  They have books of

19  guidelines, of rules.

20  A.    No, I wouldn't know.  I wouldn't know, sir.

21  Q.    Okay.  And, again, there's language in the

22  complaint that talks about the policies and

23  practices of the townships.

24        I assume you didn't read any of those policies

25  or practices, is that correct?

Samuel Strickland                    106

1      Okay.  You didn't see those prior to the

2   drafting of this complaint?

3   A.   No, sir.  If I did I didn't fully understand

4   it.  I mean, I -- nah, I wouldn't think I did.

5   Q.   Can we agree then that you don't have any

6   specific complaint regarding the policies or

7   procedures of Franklin Township?  Can we agree,

8   since you don't know what they are?

9   A.   Can I get back to you with that one?  Can I

10  answer that one at a later date?

11                  MS. BARISH:  Not really.

12  BY MR. KLINE:

13  Q.   When you're at a deposition you pretty much --

14  you have to answer the question, sir.

15                  MR. BARISH:  If you don't

16  understand the question he can rephrase it for you

17  though.

18  BY MR. KLINE:

19  Q.   All right.  Sure.

20  A.   Please.

21  Q.   I'll take this step by step.

22     You never read any written policies from

23  Franklin Township, correct?

24  A.   Correct.

25  Q.   From that testimony you just gave that you

Samuel Strickland                    108

1    would be acting under their guidelines.

2    Q.    Okay.  Yeah, I don't think we're disagreeing

3    on that point.  Officers, generally, in certain

4    townships, have rules and guidelines they have to

5    follow.

6    A.    Right.  Right.

7    Q.    We're not here to argue about that.  But what

8    I'm asking you is, you can't sit here and say those

9    policies are racist or those policies are improper,

10   even if we don't say racist, are improper, you

11   never read them, you don't even know what's in the

12   policies, correct?

13   A.    Correct.

14   Q.    Okay.

15   A.    Correct.

16   Q.    I'm glad we had this discussion.  That's where

17   I was going.

18        Okay.  Similar question regarding a lack of

19   training.  You don't know how Officer Buonaiuto was

20   trained or not trained, correct?

21   A.    I wasn't there when he went through his

22   training if that's what you're asking me.  I mean,

23   I wasn't there.

24   Q.    I understand you weren't there when he went

25   through his training.  You make a reference in your

Samuel Strickland                    92

1    BY MR. KLINE:

2    Q.    You need to say yes or no.  Even though I

3    might know what you mean, she needs a verbal

4    response.  I forget that instruction was given.

5         Okay.  So can I take it from that testimony

6    you don't know which officer put handcuffs on you,

7    is that correct?

8    A.    That's correct.

9    Q.    And you don't know which car you were put into

10   when you were taken out of the SUV; meaning was it

11   a Mahoning car or Franklin car, some kind of Carbon

12   County car, another car?

13   A.    No.  I don't know exactly which car it was, no

14   I don't.

15   Q.    You don't know which officer -- I think you

16   said it was one -- which officer drove you from

17   that point to the police station or to the

18   magistrate office, whatever came next?  You don't

19   know which officer drove you?

20   A.    No, sir, I don't.

21   Q.    Do you know which jurisdiction brought

22   charges?  Meaning, was it Mahoning Township, was it

23   Carbon County, was it Franklin Township?

24   A.    Brought charges against me?

25   Q.    Yeah.  Do you know who ultimately charged you?

Samuel Strickland                96

1    been over this already -- the other attorney, that

2    name you can't recall, correct?

3    A.    Exactly.

4                    (Discussion off the record.)

5    BY MR. KLINE:

6    Q.    Now, earlier you told us you drank a six pack

7    probably that day, before you went out to Carbon

8    County?

9    A.    Uh-huh.

10   Q.    Does that sound right?

11   A.    Yes, sir.

12   Q.    Do you remember what that was, whether it was

13   Miller Light, Yuengling Lager?

14   A.    It's Olde English.

15   Q.    I'm sorry?

16   A.    Olde English.

17   Q.    Olde English?

18   A.    Yes, sir.

19   Q.    And are we talking about a six pack of --

20   A.    16 ounce cans.

21   Q.    You read my mind.  All right, six pack of 16

22   ounce cans.  Okay.

23         So as we sit here today, you're not aware of

24   any of racist remarks by Officer Buonaiuto at the

25   scene of the accident or afterwards?

1   Q.    Okay.  I appreciate that.

2         "On February 1, 2007, in order to resolve the

3   situation the plaintiff was forced to enter a plea

4   of guilty to false identification to law

5   enforcement officers even though there was never

6   any legal cause to arrest the plaintiff in the

7   first place and he did not do anything illegal at

8   all on the day in question..."

9         I'm going to stop right there.  It does

10  continue and I could read the rest of it.  I just

11  want to stop right there for a second.

12  A.    Okay.

13  Q.    Now, what's your understanding of giving a

14  false name to a police officer?  Do you think

15  that's illegal?

16  A.    Prior to me being put in the back of that car?

17  Prior to me being put in the back of the police car

18  I did not do nothing illegal.  That's where that's

19  going.

20  Q.    Okay.  Now, let's pick it up from that point.

21        Do you think it's illegal if a cop -- an

22  officer, excuse me -- says what's your name and you

23  say Michael Andrews instead of Craig Strickland, do

24  you think that's illegal?

25  A.    Yeah, I think it is, but there's situations

Samuel Strickland                    109

1    complaint to a lack of training regarding Mertz and

2    Buonaiuto.

3         You don't know if there's a lack of training

4    for those guys, isn't that correct?

5    A.    That's a question that can go one way or the

6    other because I might not know what -- my

7    statements are made upon interacting with them, you

8    know what I mean?  So, in other words, by their

9    actions comes my reaction, do you understand what

10   I'm saying?

11   Q.    I think so.  I don't want to cut you off.  Are

12   you done with your answer?

13   A.    Yes, sir.

14   Q.    I just want to ask a follow-up question.

15        Now, I understand earlier you told me, you

16   know, that your personal opinion about the way this

17   entire incident occurred.

18   A.    Uh-huh.  Yes, sir.

19   Q.    You gave your personal opinion.  Now, what I'm

20   asking you now is you interacted with certain

21   officers that day, and is it your personal opinion,

22   based on that interaction, that there could be a

23   lack of training versus you don't know whether

24   there was or was not?

25   A.    My personal opinion, yes, there could be a

Samuel Strickland                    110

1    lack of training.

2    Q.    It's your opinion that there could be a lack

3    of training?

4    A.    Yes, sir.

5    Q.    So what's in the complaint regarding lack of

6    training is not based on your knowledge of how much

7    training occurred, what the specific --

8    A.    Oh, I don't know exactly how much training

9    they had or how much training they have lack of,

10   no, I don't.

11                    (Brief interruption to allow

12   court reporter's change of paper.)

13   BY MR. KLINE:

14   Q.    Now, Mr. Strickland, I think this was covered

15   before by Ms. Barish, but in terms of the actual

16   events as they went down that are referenced in the

17   complaint, this stuff is based upon not your

18   personal knowledge but information maybe from James

19   Rose or from Craig Strickland?   For example,

20   Fahringer yelled to Rose, quote, just put the dogs

21   in the driveway and get the F, I'll say, off my

22   property.

23   A.    I didn't witness none of this, sir.

24   Q.    Okay.   Paragraph 31, subparagraph F, less than

25   20 seconds after Rose got off the phone with the

Samuel Strickland                    73

1   were able to observe?

2   A.    Yes, ma'am.

3   Q.    Okay.  Did you ever see Mr. Craig Strickland's

4   complaint?

5   A.    Did I ever see it?

6   Q.    Uh-huh.

7   A.    In regards to what?

8   Q.    Did you ever read it?  He has filed his own

9   complaint similar to your complaint.  Did you ever

10  read his?

11  A.    Not that I remember.

12  Q.    Did you ever read Mr. Rose's?

13  A.    Not that I remember.

14  Q.    Okay.  Do you know anything or have any

15  information about how any of the officers on the

16  scene were trained to be police officers?  Because

17  there's some criticism here of the way that they

18  were trained, and I'm wondering if you have any

19  information about how they were trained?

20  A.    No, I don't.

21  Q.    Okay.  So when you signed this complaint, was

22  it based on your trust that Mr. Anthony was

23  providing accurate information as you related to

24  him and as --

25  A.    Yes, ma'am.  Yes, ma'am.

EXHIBIT 2

# COURT OF COMMON PLEAS OF CARBON COUNTY

## DOCKET



**Docket Number: CP-13-CR-0000098-2007**

# CRIMINAL DOCKET

**M3 Disposed by Lower Court**

Commonwealth of Pennsylvania

v.

Samuel D. Strickland

Page 1 of 4

## CASE INFORMATION

Judge Assigned: Nanovic, Roger N.

OTN: K5310922

Initial Issuing Authority: Edward M. Lewis

Arresting Agency: Mahoning Twp Police Dept

Case Local Number Type(s)

Date Filed: 02/01/2007        Initiation Date: 02/01/2007

Lower Court Docket No: CR-0000324-06

Final Issuing Authority: Edward M. Lewis

Arresting Officer: Mertz, Audie M.

Case Local Number(s)

## STATUS INFORMATION

| Case Status: | Closed | Status Date 02/01/2007 | Processing Status Completed | Arrest Date: | 11/18/2006 |

## CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|

## DEFENDANT INFORMATION

Date Of Birth:        09/01/1960        City/State/Zip: Philadelphia, PA 19132

Alias Name
Strickland, Samuel
Strickland, Samuel D. Jr
Strickland, Samuel Jr

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Defendant | Strickland, Samuel D. |

## BAIL INFORMATION

**Strickland, Samuel D.**                                                    **Nebbia Status: None**

| Bail Action | Date | Bail Type | Percentage | Amount | | |
|---|---|---|---|---|---|---|
| | | | | | Bail Posting Status | Posting Date |
| Set | 11/18/2006 | Monetary | | $1,000.00 | | |
| | | | | | Posted | 11/20/2006 |

AOPC 2220 - Rev 10/04/2009                                                              Printed: 10/04/2009

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF CARBON COUNTY

## DOCKET



**Docket Number: CP-13-CR-0000098-2007**

# CRIMINAL DOCKET

**M3 Disposed by Lower Court**

Commonwealth of Pennsylvania

v.

Samuel D. Strickland

Page 2 of 4

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Date | OTN |
|------|-----------|-------|---------|---------------------|--------------|-----|
| 1 | 1 | M2 | 18 § 4906 §§A | False Report - Falsely Incriminate Another | 11/18/2006 | K5310922 |
| 2 | 2 | M3 | 18 § 4914 §§A | False Identification To Law Enf. Off. | 11/18/2006 | K5310922 |
| 3 | 3 | S | 18 § 3503 §§B1I | Def Tres Actual Communication To | 11/18/2006 | K5310922 |

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event | Disposition Date | Final Disposition |
|---|---|---|
| Sequence/Description | Offense Disposition | Section |
| Sentencing Judge | Sentence Date | Credit For Time Served |
| Sentence/Diversion Program Type | Incarceration/Diversionary Period | Start Date |
| Sentence Conditions | | |
| Linked Offense - Sentence | Link Type | Linked Docket Number |

**Lower Court Proceeding (generic)**

| Lower Court Disposition | 01/31/2007 | Not Final |
|---|---|---|
| 1 / False Report - Falsely Incriminate Another | Dismissed (Lower Court) | 18§4906§§A |
| Lewis, Edward M. | 02/01/2007 | |
| | | |
| 2 / False Identification To Law Enf. Off. | Guilty Plea (Lower Court) | 18§4914§§A |
| Lewis, Edward M. | 02/01/2007 | |
| | | |
| 3 / Def Tres Actual Communication To | Dismissed (Lower Court) | 18§3503§§B1I |
| Lewis, Edward M. | 02/01/2007 | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF CARBON COUNTY

### DOCKET

**Docket Number: CP-13-CR-0000098-2007**

# CRIMINAL DOCKET

**M3 Disposed by Lower Court**



Commonwealth of Pennsylvania

v.

Samuel D. Strickland

Page 3 of 4

## COMMONWEALTH INFORMATION

| | |
|---|---|
| <u>Name:</u> | Jean A. Engler, Esq. |
| | District Attorney |
| <u>Supreme Court No:</u> | 043819 |
| <u>Phone Number(s):</u> | |
| (570) 325-3000 | (Phone) |
| (570) 325-0277 | (Fax) |
| <u>Address:</u> | |

Carbon County District Attorney's Office
Carbon County Courthouse
PO Box 36
Jim Thorpe PA 18229

## ATTORNEY INFORMATION

| | |
|---|---|
| <u>Name:</u> | W. Thomas Anthony Jr., Esq. |
| | Private |
| <u>Supreme Court No:</u> | 030053 |
| <u>Rep. Status:</u> | Active |
| <u>Phone Number(s):</u> | |
| (610) 691-7633 | (Phone) |
| (610) 866-4626 | (Fax) |
| <u>Address:</u> | |

U.S. Department of Education - Office for Civil Rights
451 Main Street
Bethlehem PA 18018

Representing: Strickland, Samuel D.

## ENTRIES

| Sequence Number | CP Filed Date | Document Date |
|---|---|---|
| 1 | 11/18/2006 | |
| Bail Set - Strickland, Samuel D. | | |
| | | Lewis, Edward M. |

| | | |
|---|---|---|
| 1 | 02/01/2007 | |
| M3 Disposed No Payment | | |
| | | Unknown Filer |

AOPC 2220 - Rev 10/04/2009

Printed: 10/04/2009

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF CARBON COUNTY

## DOCKET



**Docket Number: CP-13-CR-0000098-2007**

# CRIMINAL DOCKET

**M3 Disposed by Lower Court**

Commonwealth of Pennsylvania

v.

Samuel D. Strickland

Page 4 of 4

## CASE FINANCIAL INFORMATION

Last Payment Date:                                                      Total of Last Payment:  $0.00

| Strickland, Samuel D.<br>Defendant | Assessment | Payments | Adjustments | Non Monetary<br>Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| JCP | $8.00 | $0.00 | -$8.00 | $0.00 | $0.00 |
| ATJ | $2.00 | $0.00 | -$2.00 | $0.00 | $0.00 |
| State Court Cost (Act 204 of 1976) | $9.70 | $0.00 | -$9.70 | $0.00 | $0.00 |
| County Court Costs (Act 204 of 1976) | $27.00 | $0.00 | -$27.00 | $0.00 | $0.00 |
| Commonwealth Cost - HB627 (Act 167 of 1992) | $8.30 | $0.00 | -$8.30 | $0.00 | $0.00 |
| Crime Victims Compensation (Act 96 of 1984) | $35.00 | $0.00 | -$35.00 | $0.00 | $0.00 |
| Victim Witness Services (Act 111 of 1998) | $25.00 | $0.00 | -$25.00 | $0.00 | $0.00 |
| Domestic Violence Compensation (Act 44 of 1988) | $10.00 | $0.00 | -$10.00 | $0.00 | $0.00 |
| Postage | $11.00 | $0.00 | -$11.00 | $0.00 | $0.00 |
| Costs/Fees Totals: | $136.00 | $0.00 | -$136.00 | $0.00 | $0.00 |
| **Fines** | | | | | |
| Crimes Code, etc. | $300.00 | $0.00 | -$300.00 | $0.00 | $0.00 |
| Fines Totals: | $300.00 | $0.00 | -$300.00 | $0.00 | $0.00 |
| Grand Totals: | $436.00 | $0.00 | -$436.00 | $0.00 | $0.00 |

** - Indicates assessment is subrogated

Printed: 10/04/2009

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.