# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL STRICKLAND,<br>　　　　Plaintiff<br><br>　　　v.<br><br>MAHONING TOWNSHIP,<br>FRANKLIN TOWNSHIP,<br>CARBON COUNTY,<br>OFFICER AUDIE M. MERTZ,<br>POLICE CHIEF MARK ZENKO,<br>OFFICER FRANK BUONAIUTO,<br>RALPH FAHRINGER, and<br>JESSICA FAHRINGER,<br>　　　　Defendants | No. 3:08cv1570<br><br>(Judge Munley) |

## ORDER

　　　Before the court are three motions for summary judgment filed by the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docs. 40, 43, 46). The matter is ripe for disposition.

## BACKGROUND

　　　This case arises out of the November 18, 2006 arrest of Plaintiff Samuel Strickland ("Plaintiff"), his brother Craig Strickland, and James E. Rose, Jr. ("Rose") by police officers from the defendant municipalities. (Compl. at ¶ 27 (Doc. 1)). Plaintiff and Craig Strickland had spent that Saturday working to repair the floor of an Allentown nightclub owned by their friend Rose. (Id.) Sometime in the afternoon, Rose asked the Strickland brothers to help him return three dogs to the Carbon County home of Defendant Ralph Fahringer. (Id.) Plaintiff was tired, had been drinking at the club and had not slept much the previous night. (Id.)

　　　Plaintiff fell asleep in the back of the truck on the way to Fahringer's home in Lehighton, Pennsylvania. (Id. at ¶ 30). He remained asleep in the truck when the three men arrived at the Fahringer's home. (Id. at ¶ 31). When Plaintiff woke up, he learned that Defendant Ralph Fahringer had confronted Rose and Craig Strickland with a shotgun and that Rose had

dialed 911. (Id. at ¶ 31).

Police from several townships, told by the 911 operator that there was a man at the scene with a gun, responded to the call. (Compl. at ¶ 31; SUF #3 at ¶ 5). The police searched Plaintiff, his companions, and their vehicle for weapons. (Compl. at ¶ 37; SUF #3 at ¶ 6). The Plaintiff and his companions were detained while the police continued their investigation and questioning. (Compl. at ¶¶ 38 - 40; SUF #3 at ¶ 7). Officer Frank Buonaiuto ("Officer Buonaiuto") of the Franklin Township Police Department and Officer Audie Mertz ("Officer Mertz") of the Mahoning Township Police Department asked the Plaintiff to identify himself and Plaintiff provided the false name of "Michael Andrews." (Compl. at ¶ 41; SUF #3 at ¶ 8). When the police realized the name was false they arrested Plaintiff, handcuffed him, and placed him in the back of a police car. (SUF #3 at ¶ 9; Statement of Undisputed Facts of Defendants Franklin Township and Officer Frank Buonaiuto ("SUF #2") at ¶11 (Doc. 45)). Plaintiff admits that the police did not use excessive force. (SUF #2 at ¶ 4). Officer Mertz contacted Assistant District Attorney Greek who approved criminal charges against Plaintiff for providing false identification to a law enforcement officer pursuant to 18 PA. CONS. STAT. ANN. § 4914, false reporting to a law enforcement officer pursuant to 18 PA. CONS. STAT. ANN. § 4906, and criminal trespass pursuant to 18 PA. CONS. STAT. ANN. § 3503. (SUF #3 at ¶¶ 12, 13; Statement of Facts of Carbon County ("SUF #1") at ¶ 3 (Doc. 41)). Approval was also given to arrest and charge Rose. (SUF #3 at ¶ 14).

Plaintiff and Rose were jailed by the Mahoning Township Police. (Compl. at ¶¶ 68 - 72). Plaintiff was arraigned before a Pennsylvania District Court Magistrate who set bail at $1,000.00. (SUF #1 at ¶ 5). Because Plaintiff could not post bail he was taken to the Carbon County

2

Correctional Facility ("CCCF") for incarceration on November 18, 2006 at 11:30 p.m. (Id. at ¶¶ 2, 6). A CCCF processing officer completed an intake form noting that Plaintiff was not taking any medication, was not injured, had no immediate medical needs, and was not in distress. (Id. at ¶¶ 9 - 10). Plaintiff was provided with prison clothing, bedding, and a hygiene kit. (Id. at ¶¶ 19 - 21).

Plaintiff was put in a cell with three other inmates. (Id. at ¶ 11). Plaintiff felt intimidated by these three cell-mates who directed racial slurs at him, but who did not make physical threats towards him. (Id. at ¶ 12). Plaintiff did not complain to CCCF staff about his cell-mates or the conditions of his confinement. (Id. at ¶¶ 13, 15). Plaintiff was served breakfast, lunch, and dinner in his cell and suffered no physical harm. (Id. at ¶¶ 14, 17). Plaintiff admits that no county employee made racists comments during his incarceration. (Id. at ¶ 16). Plaintiff was released on November 19, 2006 at 7:45 p.m. after posting bond, having spent twenty hours at the CCCF. (SUF #1 at ¶¶ 2, 18).

On February 2, 2007 Plaintiff pleaded guilty to providing false identification to a law enforcement officer pursuant to 18 PA. CONS. STAT. ANN. § 4914, a misdemeanor in the third degree. (Id. at ¶ 22). Plaintiff never challenged his guilty plea. (Id.)

On August 22, 2008, Plaintiff filed the instant complaint (Doc. 1) and a motion for leave to proceed *in forma pauperis* (Doc. 2) in this court. The complaint consists of three counts. Count I, brought pursuant to 42 U.S. §§ 1981, 1982 and 1983 against Defendants Officer Mertz, Officer Buonaiuto, Carbon County Mahoning Township, and Franklin Township, alleges that the defendants violated Plaintiff's constitutional rights. Count II, brought pursuant to 42 U.S.C. § 1985, alleges a conspiracy between Defendants Officer Mertz, Officer Buonaiuto, Carbon County, Franklin

3

Township, Mahoning Township, Ralph Fahringer, and Jessica Fahringer to violate Plaintiff's constitutional rights. Count III alleges supervisory liability pursuant to 42 U.S.C. § 1986 against Defendants Mahoning Township, Carbon County, Franklin Township, and Chief Zenko.[1]

On October 9, 2008, Defendant Carbon County filed a motion to dismiss the instant complaint. (Doc. 7). On November 7, 2008, the court granted the Plaintiff's motion to proceed *in forma pauperis* but dismissed Plaintiff's claims for false arrest and excessive bail, as well as his claims against certain defendants. (Doc. 11). The court granted Defendant Carbon County's motion to dismiss with respect to Plaintiff's claim for punitive damages and denied it in all other respects. (Id.) After the court issued this decision, Plaintiff served the complaint on the remaining defendants.

Defendants Mahoning Township, Mahoning Township Police Department, Officer Mertz and Chief Zenko then filed a motion to dismiss on December 5, 2008. (Doc. 15). On December 30, 2008 Defendant Carbon County filed motions to consolidate this action with 3:07cv1305 and 3:08cv1792.[2] (Docs. 18, 19). On February 16, 2009, Defendants Franklin Township and Frank Buonaiuto filed an answer to the complaint. (Doc. 27).

---

[1] Plaintiff's claims of supervisory liability against Bruce Keiper, Charles Eidem, Dawn Blocker, Patricia Snyder, George Stawnyczyj, Rod Green, Larry Smith, and Paul Kocher were previously dismissed and those parties were terminated. (See Order of Nov. 7, 2008 (Doc. 11-2)).

[2] The Plaintiff's companions are the Plaintiffs in the related cases Rose v. Mahoning Twp., No. 3:07cv1305 (M.D. Pa. filed Jul. 18, 2007) and Strickland v. Mahoning Twp., No. 3:08cv1792 (M.D. Pa. filed Sept. 29, 2008).

On July 8, 2009, this court entered an order (Doc. 33) granting, in part, and denying, in part, the motion to dismiss of December 5, 2008. The motion was granted with respect to Plaintiff's claims against the Mahoning Township Police Department, which was terminated as a party. The motion was granted with respect to Plaintiff's claims for punitive damages against Mahoning Township and against the individual defendants in their official capacities. The motion was granted with respect to Plaintiff's claims against the individual defendants in their official capacities. The motion was denied in all other respects. (Doc. 33).

On August 17, 2009, Plaintiff filed a motion to quash the deposition of James E. Rose. (Doc. 37). The court denied this motion on August 27, 2009. (Doc. 39). Defendant Carbon County filed its motion for summary judgment (Doc. 40) on November 17, 2009. Defendants Franklin Township and Officer Frank Buonaito filed their motion for summary judgment (Doc. 43) on November 24, 2009. Defendants Mahoning Township, Officer Audie Mertz, and Chief Mark Zenko filed their motion for summary judgment (Doc. 46) on November 29, 2009.

On January 25, 2010, the court granted Plaintiff a continuance to afford him an opportunity to meet with an attorney, directing Plaintiff to submit a status report by February 4, 2010 indicating whether or not he would respond to defendants' motions under penalty of having defendants' motions treated as unopposed. (Doc. 55). On February 3, 2010 Plaintiff filed a note stating that he had met with an attorney who was reviewing his case, but giving no indication as to whether briefs in opposition to defendants' motions would be forthcoming. (Doc. 56). Accordingly, this court, on February 5, 2010, ordered Plaintiff to submit briefs in opposition to defendants' motions by February 24, 2010 regardless of whether counsel had been retained, warning again that a failure to submit a brief

would result in defendants' motions being treated as unopposed with all factual averments accepted as true. (Doc. 57). Plaintiff has not submitted a brief in opposition to any of defendants' motions for summary judgment and the time for such filing has elapsed. These motions are, therefore, ripe and will be treated as unopposed with all of defendants' factual averments accepted as true. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168 (3d Cir. 1990).

**JURISDICTION**

As this case is brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 for constitutional violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**LEGAL STANDARD**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the

evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Plaintiff brings various claims against the eight remaining defendants. The court will address each claim in turn.

**I. Claims of constitutional violations under section 1983 against Mertz, Buonaiuto, Mahoning Township, and Franklin Township**

Following two motions to dismiss, which were both partially granted, Plaintiff's remaining claims are for (1) unreasonable search and seizure under the Fourth Amendment, (2) cruel and unusual punishment under the Eighth Amendment, and (3) violation of the Equal Protection Clause of the Fourteenth Amendment.[3]

---

[3] Plaintiff originally brought claims under section 1983 for (1) unlawful arrest; (2) unreasonable search and seizure; (3) cruel and unusual punishment; (4) excessive bail; (5) limits on his freedom of speech; (6) deprivations of his liberty without due process of law; (7) excessive force; (8) summary punishment; (9) racial discrimination and racial profiling; and (10) unlawful restrictions on his right to travel. (See Compl. at ¶¶ 93(a) - (j)). This court distilled those claims into: (1) excessive bail; (2) unlawful

### A. Unreasonable Search and Seizure

Defendants argue that no evidence supports Plaintiff's unlawful search and seizure claim. "'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]'" Terry v. Ohio, 392 U.S. 1, 8 (1968) (quoting U.S. CONST. amend. IV). What the Fourth Amendment "'forbids is not all searches and seizures, but unreasonable searches and seizures.'" Id. at 9 (quoting Elkins v. United States, 364 U.S. 206, 222 (1960)). "The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005). A search violates a person's constitutional rights only when that search is unreasonable, and "[d]etermining whether a search is reasonable 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" Id. (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989)).

Here, the search and seizure occurred after police detained Plaintiff and his two companions after responding to a 911 call concerning the brandishing of weapons at a residence.[4] That standard establishes that

---

arrest; (3) unreasonable search and seizure; (4) cruel and unusual punishment; and (5) racial profiling (equal protection). (See Order of Nov. 7, 2008 (Doc. 11)). The court dismissed Plaintiff's claims for excessive bail and unlawful arrest as frivolous. (See Id. at 21).

[4] The record does not definitively establish whether the Plaintiff and his companions were driving when the police arrived or whether they were either occupants or recent occupants of their truck just outside of the Fahringers' property. Regardless of the factual specifics, the legal analysis in each of these contexts remains the same, given the 911 call regarding an armed confrontation at the location. See United States v. Delfin-Colina,

8

"'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (quoting United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000)).

This requirement is not particularly onerous: "[r]easonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." Delfin-Colina, 464 F.3d at 396 (internal quotations and citations omitted). In then end, the court must "weigh 'the totality of the circumstances–the whole picture.'" Id. at 396 (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)).

Officers Buonaiuto and Mertz, along with their respective townships, argue that the detention and arrest of the Plaintiff were completely reasonable, under the circumstances. The Plaintiff admitted in his deposition that the officers never used excessive force against him. He argues only that his detention was unreasonable because he had been sleeping during the confrontation.

Read in a light most favorable to the Plaintiff, there is no genuine issue of material fact but that his seizure was reasonable. Officers Buonaiuto and Mertz responded to a 911 dispatch regarding a confrontation involving a firearm. Based on that information the officers could reasonably detain anyone they found at that location, search them

---

464 F.3d 392, 396 (3d Cir. 2006) ("Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in Terry v. Ohio.").

for weapons, and question them regarding the incident. The record indicates that the officers questioned all of the individuals at the scene. The Plaintiff, upon questioning, falsely identified himself, giving the police probable cause to arrest the Plaintiff for providing false identification to a law enforcement officer in violation of 18 PA. CONS. STAT. ANN. § 4914. Officer Mertz arrested the Plaintiff in a manner Plaintiff concedes was reasonable. Simply stated, there was nothing unreasonable about this course of events, under the totality of the circumsances and viewed objectively. For this reason, summary judgment is appropriate in favor of the defendants over Plaintiff's Fourth Amendment claim of unreasonable search and seizure.

### B. Equal Protection

Plaintiff alleges that his equal protection rights were violated by racial profiling. "To make out an equal protection claim in the profiling context," a plaintiff must show that police actions "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). Discriminatory effect occurs when a plaintiff demonstrates that "she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." Id. at 206. That effect "may be proven by naming similarly situated members of an unprotected class who were not selected for the same [treatment] or, in some cases, by submitting statistical evidence of bias." Id.

Regarding discriminatory effect, the defendants concede that Plaintiff– an African American– is a member of a protected class. Defendants argue, however, that Plaintiff can neither show that he was treated differently from any member of an unprotected class who was similarly situated, nor show that defendants were motivated by a

discriminatory purpose. We agree with the defendants. It is clear that the Plaintiff has not raised a genuine issue of material fact as to whether defendants acted out of discriminatory animus. As noted above, the conduct of Officers Buoniauto and Mertz during the investigatory stop detention and eventual arrest of Plaintiff was reasonable. They had a reasonable and articulable suspicion that Plaintiff might have possessed a gun. Plaintiff then falsely identified himself to the officers, giving them probable cause to arrest him. Nothing indicates that their actions were driven by race. Instead, even read in a light most favorable to the Plaintiff, there is no genuine issue of material fact but that Plaintiff's admitted violation of the law caused his arrest.

Further, Plaintiff can point to no members of an unprotected class who were similarly situated to him. The record indicates that the officers conducted an investigation and spoke with all of the people involved in the confrontation. Presumably the Plaintiff believes that the Fahringers– members of an unprotected class– were similarly situated to him. There are, however, no facts indicating that they falsely identified themselves to the officers or otherwise gave the officers probable cause to arrest them. For these reasons, summary judgment will be granted in favor of the defendants on Plaintiff's equal protection claim.

**C. Cruel and Unusual Punishment**

Plaintiff complains that the conditions under which he was confined were intolerably cold and inhumane. The Eighth Amendment to the United States Constitution bars "cruel and unusual punishment," and the "Due Process Clause of the Fourteenth Amendment operates to provide similar protection to pre-trial detainees." Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997). To prevail on an Eighth Amendment claim based, as here, on the conditions of confinement, the court "must determine if prison

officials acted with 'deliberate indifference' to the inmate's health." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The objective inquiry is whether the inmate was "'denied the minimal civilized measure of life's necessities.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Plaintiff has not presented a genuine issue of material fact as to whether the defendants denied him minimally civilized necessities of life. Plaintiff was housed at the Carbon County Correctional Facility ("CCCF") for twenty hours until he posted bail. Staff at the CCCF evaluated the Plaintiff's medical and psychological needs upon his arrival. The intake checklist shows that the Plaintiff did not require any specialized consideration. The Plaintiff was issued clothing, bedding– including sheets, a pillow, and a wool blanket– and toiletries. Plaintiff alleges he was subjected to emotional intimidation in the form of racial slurs by his three cell-mates. He also says it was very cold. Plaintiff admits that he was never physically harmed or threatened. Plaintiff admits that no CCCF staff mistreated him and that he never complained to CCCF staff about the racial slurs or the conditions of his confinement while he was held.

In essence, Plaintiff has shown no facts indicating that he was mistreated. Even if other inmates made racial insults towards Plaintiff, no facts show that the CCCF staff were indifferent to the Plaintiff's well-being– they were never put on notice of the other inmates' behavior or that the Plaintiff was cold. Because the CCCF did not violate the Plaintiff's Eighth Amendment right against cruel and unusual punishment or his rights under the Due Process Clause of the Fourteenth Amendment, summary judgment will be granted in favor of Carbon County. Summary judgment will also be granted in favor of Franklin Township, Officer Buoniauto, Mahoning Township, and Officer Mertz because no facts indicate they

were in any way responsible for the events complained of.

## II. Claims of conspiracy to violate Plaintiff's constitutional rights under section 1985 against Officer Mertz, Officer Buonaiuto, Ralph Fahringer, and Jessica Fahringer[5]

Count II of the complaint raises a claim, pursuant to 42 U.S.C. § 1985, alleging that the defendants engaged in a conspiracy to deprive Plaintiff of his civil rights. (See Compl. at ¶ 101 (alleging that defendants conspired to falsely arrest Plaintiff, manufacture evidence, submit false police reports, use excessive force, intimidate and racially discriminate against him)). The elements of such a cause of action are: "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).

Officers Mertz and Buonaiuto both argue that Plaintiff's conspiracy claim must fail because Plaintiff suffered no constitutional harm. Officer Mertz argues further that Plaintiff can point to no act which defendants took in furtherance of any conspiracy. We agree. As explained above in Part I, Plaintiff has not established a genuine issue of material fact as to whether the defendant officers deprived Plaintiff of any constitutional right. Because a civil conspiracy under section 1985 requires a predicate violation of a constitutional right, Plaintiff's conspiracy claims must also fail.

---

[5] Plaintiff's claims of conspiracy against Carbon County, Mahoning Township, and Franklin Township were dismissed as frivolous. (See Order of Nov. 7, 2008 (Doc. 11-2 at 14)).

13

This conclusion applies not only to the officers, but also to Ralph and Jessica Fahringer who are alleged to have engaged in the conspiracy.

### III. Claims of supervisory liability against Mahoning Township, Carbon County, Franklin Township, and Chief Zenko[6]

Regarding Mahoning Township, Franklin Township, and Carbon County, municipal liability under 42 U.S.C. § 1983 is available only under certain circumstances. The standard first articulated in <u>Monell v. Dept. of Soc. Servs. of the City of New York</u>, provides that "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated [by that body's officers.]" 436 U.S. 658, 690 (1978). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 214 (3d Cir. 2001) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)). If a municipality has a policy or custom of not training its police officers then the municipality will be liable for that failure "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" <u>Brown</u>, 269 F.3d at 215 (quoting <u>City of Canton</u>, 489 U.S. at 388).

Regarding Mahoning Township and Franklin Township, the Plaintiff

---

[6] The Plaintiff's complaint raises a claim of supervisory liability under section 1986. That claim requires a predicate claim under section 1985, which we have already precluded above, and therefore summary judgment is appropriate in favor of defendants. 42 U.S.C. § 1986; <u>Clark v. Clabaugh</u>, 20 F.3d 1290, 1295 n. 5 (3d Cir. 1994). Accordingly, we will only address the portions of the Plaintiff's complaint based on claims of policy, practice, custom, and training, which might otherwise raise a genuine issue of material fact as to supervisory liability.

has failed to establish a genuine issue of material fact as to any discriminatory policy. Plaintiff has not presented any evidence of any actual policy of the townships regarding race. (SUF #3 at ¶ 20; SUF #2 at ¶ 6). The Plaintiff also cannot point to any policy against training their officers to deal with racial situations– he has presented no evidence on the townships' training whatsoever. (SUF #3 at ¶ 23; SUF #2 at ¶).

Neither can the Plaintiff establish a genuine issue of material fact as to whether Mahoning Township and Franklin Township had a custom of discriminating based on race. As determined above, there is no genuine issue of material fact as to whether the officers who arrested him violated his constitutional rights. Plaintiff points to no prior instance of discrimination by these townships, let alone repeated instances. See Brown, 269 F.3d at 215 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167 (1970) for the proposition that, in this context, "custom" must have the force of law via persistent application by state officials). Just as Plaintiff could not point to any policy of the townships against training their officers, neither can he establish a genuine issue of fact as to whether they had an equivalent custom. Plaintiff points to nothing in the record indicating how officers are customarily trained, or not trained. Because Plaintiff has not established a genuine issue of material fact as to whether Mahoning Township or Franklin Township had a policy or custom which caused any constitutional deprivation summary judgment will be granted in favor of these defendants.

Regarding Carbon County, the Plaintiff has not established that the CCCF had a policy or custom of treating prisoners differently based on race. Plaintiff states that other inmates intimidated him with racial slurs, but admits that he was never threatened, was never injured, and never informed the staff at the CCCF of the slurs. Plaintiff has not presented a

15

genuine issue of material fact as to whether Carbon County had a policy or custom of treating prisoners differently based on race. For these reasons, Carbon County will be granted summary judgment on Plaintiff's supervisory liability claim.

In order to make out a supervisory liability claim against Defendant Chief Zenko, the Plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown, 269 F.3d at 216 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Thus, the Plaintiff must show that Zenko acted or failed to act in a way evincing deliberate indifference towards discrimination by his officers and that "there is a relationship between the identified deficiency and the ultimate injury." Brown, 269 F.3d at 216 (internal quotation and citation omitted). Because we have found that there was no violation by an "underling" of Chief Zenko, there is no triable issue of supervisory liability. Furthermore, the Plaintiff has failed to point out what specific practice Zenko failed to employ or that he was indifferent to how his officers handled situations involving members of a protected class. For these reasons, the court will grant Chief Zenko's motion for summary judgment on this claim.

**CONCLUSION**

Based on the foregoing analysis, defendants are entitled to summary judgment on each of Plaintiff's remaining claims. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMUEL STRICKLAND,<br>    Plaintiff<br><br>    v.<br><br>MAHONING TOWNSHIP,<br>FRANKLIN TOWNSHIP,<br>CARBON COUNTY,<br>OFFICER AUDIE M. MERTZ,<br>POLICE CHIEF MARK ZENKO,<br>OFFICER FRANK BUONAIUTO,<br>RALPH FAHRINGER, and<br>JESSICA FAHRINGER,<br>    Defendants | No. 3:08cv1570<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, upon consideration of defendants' motions for summary judgment (Docs. 40, 43, 46) are HEREBY **GRANTED** and the Plaintiff Samuel Strickland's claims are **DISMISSED** against all defendants. The Clerk of Court is directed to **CLOSE** the case.

                                          **BY THE COURT:**

Date:   3/30/10                              s/ James M. Munley
                                                **JUDGE JAMES M. MUNLEY**
                                                **United States District Court**